```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
TOSHIBA CORPORATION,                     :
                                         :
                    Plaintiff,           :    12 Civ. 800 (DLC)
                                         :
          -v-                            :    OPINION AND ORDER
                                         :
AMERICAN MEDIA INTERNATIONAL, LLC,       :
                                         :
                    Defendant.           :
                                         :
----------------------------------------X
```

APPEARANCES:

For the plaintiff:
Carey Ramos
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010

For defendant:
Robert J. King, III
Darrell A. Fruth
Brooks, Pierce, McLendon, Humphrey & Leonard LLP
PO Box 26000
Greensboro, NC 27420

Joseph French
French & Casey LLP
29 Broadway, 27th Floor
New York, NY 10006

DENISE COTE, District Judge:

Toshiba Corporation ("Toshiba") brings this action against American Media International LLC ("AMI") asserting breach of a contract for royalties in connection with the production and licensing of certain DVD products.  AMI has counterclaimed,

1

asserting its own claims of breach of contract and violation of the duty of good faith and fair dealing.  On July 13, 2012, Toshiba moved for judgment on the pleadings with respect to its breach of contract claims pursuant to Rule 12(c), Fed. R. Civ. P., and for dismissal of AMI's counterclaims pursuant to Rule 12(b)(6).  For the reasons that follow, the motions, which are treated as motions for summary judgment, are granted.

BACKGROUND

The following facts are undisputed.  Toshiba, a Japanese corporation with its principal place of business in Tokyo, is an international electronics firm that, as relevant here, serves as the authorized licensor for a group of companies known as the DVD Patent Licensing Group (the "Licensing Group") that owns numerous patents essential for the manufacture of DVD products.  AMI is a limited liability company established under the laws of Nevada with its principal place of business in North Carolina that produces and sells DVDs.

In February 2004, Toshiba and AMI executed a contract and accompanying letter agreement (collectively, the "Agreement") that granted AMI the right to manufacture, import and offer for sale DVD products using the Licensing Group's proprietary technology.  The Agreement, which was retroactively effective to

January 1, 2004, had two principle components.  First, in exchange for Toshiba's releasing it from "any and all claims of infringement of the DVD Patents . . . for the period prior to the Effective Date" of the Agreement, AMI agreed to pay back royalties in amounts that varied from $0.75 to $0.05 depending on the date of infringement (the "Back Royalties").  Second, AMI agreed on a going-forward basis to report and pay royalties to Toshiba in the amount of $0.05 per disc that AMI produced. Under the Agreement, royalty reports were to be made on a semi-annual basis and payments were due 90 days after the conclusion of each reporting period; any late payment was subject to a two-percent-per-month interest rate.  The Agreement obligated AMI "to keep accurate books with respect to sales, other transfers, and royalties, and to permit Licensor to audit those books no more than once annually" (the "Audit Clause").  The Agreement also included the following "Most Favored Rates (MFR) Clause:"

> [Article] 6.1  Except as provided in Article 6.1.1 of this Agreement, in the event that Licensor grants a DVD Patent license to another party with royalty rates more favorable than those set forth in . . . Exhibit 3, whether or not such more favorable royalty rates are on terms and conditions that are different from those set forth herein, Licensor shall send written notice to Licensee specifying the more favorable royalty rates and any terms and conditions that are different from those set forth herein within thirty (30) days of the granting of DVD Patent License providing for such more favorable royalty rates. Licensee shall be entitled to an amendment of this Agreement to the extent of providing for royalty rates

3

>as favorable as those available to such other party
>within thirty (30) days of receipt of such written
>notice from Licensor by sending written notice to
>Licensor requesting such amendment; provided, however,
>Licensee also agrees to be bound by any terms and
>conditions under which such more favorable royalty
>rates are made available to such other party,
>including any additional benefits to Licensor that may
>be included among the terms and conditions
>corresponding to such royalty rates.  Any amendment
>made pursuant to this Article 6.1 shall be effective
>as of the date it is made, and such more favorable
>royalty rates shall not be retroactively applicable in
>favor of Licensee, and shall not be a basis for
>claiming any refund of royalties paid prior to such
>effective date.
>
>>6.1.1       Article 6.1 shall not apply to:
>>6.1.1.2     Determination by Licensor of back
>>            royalties owed by a Licensee;

Article 6.4 of the Agreement provided that any dispute between the parties "arising out of or in connection with the interpretation or execution of [the] Agreement" would be litigated in New York and would be governed by New York law.

It appears that AMI initially complied with its reporting and payment obligations.  In March 2006, however, AMI failed to make the payment due for the July to December 2005 reporting period.  Indeed, despite continuing to submit reports in which it calculated and reported the royalties it owed, AMI failed to make any payments to Toshiba for the twelve semiannual periods extending from July 1, 2005 through June 30, 2011.  Throughout 2008 and again in late-2011, Toshiba sent AMI numerous e-mails in an effort to obtain payment of the outstanding royalty

4

balance, which came to total $468,139.70 based on the rate fixed by the Agreement and exclusive of interest.  AMI never suggested in response to these communications that it was entitled to a more favorable royalty rate or that Toshiba had failed to perform its obligations under the Agreement.

Also during the relevant period, Toshiba posted on its website and sent form letters on three different occasions to existing licensees, including AMI, offering reduced royalty rates.  In a letter dated March 1, 2005, Toshiba offered to reduce the royalty rate applicable to AMI from $0.05 to $0.045; a letter of January 25, 2008 offered a rate of $0.04; and a letter of December 20, 2011 offered a further-reduced rate of $ 0.0375 to licensees whose accounts were not overdue.  AMI never responded to any of these offers and, indeed, continued to report its royalty obligations using a rate of $ 0.05 per disc.

Having failed to obtain payment from AMI, Toshiba commenced this action on February 1, 2012.  On March 15, AMI filed an answer in which it denied liability and asserted counterclaims for breach of contract and breach of the implied duty of good faith and fair dealing.  After Toshiba moved to dismiss the counterclaims as inadequately pled, AMI filed an amended answer on April 25 ("Amended Answer").  The Amended Answer acknowledged that AMI had entered into the Agreement with Toshiba, that it

had submitted royalty reports for the July 2005 - June 2011 period, and that it had failed to pay the royalties calculated in the reports.  AMI denied, however, that Toshiba's complaint accurately described the rates due under the Agreement.  AMI asserted eight defenses to Toshiba's breach-of-contract claim and re-pled its own breach-of-contract and good-faith-and-fair-dealing counterclaims.  In support of its counterclaims, AMI made the following assertions:

> If Toshiba licensed its patented DVD technology at royalty rates more favorable than the rates in the License Agreement, Article 6.1 of the License Agreement required Toshiba to notify AMI and make those more favorable rates available to AMI.  Toshiba has not provided such notice to AMI, and has not offered AMI the opportunity to pay lower rates.
>
> Competitors of AMI sell DVD disks at prices below the price AMI could profitably sell DVD disks under the terms of the License Agreement.  At these prices, AMI could not cover the raw material costs and the royalty set forth in the License Agreement.  AMI, therefore, is informed and believes that Toshiba provided more favorable licensing arrangements to other parties without making these more favorable terms available to AMI, in breach of Article 6.1 of the License Agreement.
>
> [ . . . ]
>
> Based on the competition AMI is encountering in the market place described in Paragraph 6 and the fact that Toshiba did not audit AMI's books, among other things, AMI is informed and believes that AMI's competitors are underreporting sales and therefor [sic] paying effective royalty rates that are less than the royalty rates set forth in the License

>   Agreement.  This outcome—which destroys the benefits AMI negotiated for in Article 6.1 of the License Agreement—results from Toshiba's failure to audit the books of its licensees (i.e. AMI's competitors).

The Court held a conference pursuant to Rule 16, Fed. R. Civ. P., on May 4, 2012.  At the conference it was agreed that the parties would confer regarding any targeted discovery that was necessary to established any reduced-rate offers that Toshiba had made to licensees after the date of the Agreement.  The parties agreed that Toshiba would immediately produce documentation reflecting any offers to license DVD technology to third parties at rates lower than those paid by AMI since the signing of the Agreement.  Toshiba's commitment to produce these materials was memorialized in a May 15 letter to AMI.  Enclosed with the May 15 letter were copies of offer letters sent to all licensees, including AMI, in 2005, 2008, and 2011, informing them of the rate adjustments described above.  Counsel for Toshiba affirmed that, "[a]side from these three offers," the company "has never offered a lower rate to any disc replicator licensee for DVD-ROM Discs/Video Discs, and has never agreed to allow such licensee to pay a lower rate."  At no point thereafter did AMI request any additional discovery.

As noted, Toshiba filed the instant motion on July 13, 2012.  With the motion, Toshiba filed a declaration of Naoto Tsushima, the Group Manager of the Licensing Operations Group

for Toshiba (the "Tsushima Declaration"). Appended to the Tsushima Declaration were, <u>inter alia</u>, copies of twelve royalty reports that AMI submitted to Toshiba between February 2006 and December 2011. Each of these reports calculated the amount due using a royalty rate of $0.05 per disc. Toshiba's 2005, 2008, and 2011 letters offering royalty reductions to existing licensees were also included as exhibits to the Tsushima declaration. AMI filed an opposing brief but offered no documents or testimonial evidence. The motion became fully submitted on August 3, 2012.

## DISCUSSION

Toshiba's motion for judgment on the pleadings is premised on AMI's admission that it has failed to make royalty payments for the July 2005 to June 2011 period. AMI does not dispute that it failed to pay Toshiba royalties, but it argues that Toshiba's motion relies inappropriately on the Tsushima Declaration and that, in any event, further discovery is necessary to determine whether Toshiba performed under the contract and the appropriate level of damages.

I. Legal Standard

"'If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the

court, the motion must be treated as one for summary judgment under Rule 56.'" Hernandez v. Coffey, 582 F.3d 303, 307 (2d Cir. 2009) (quoting Fed. R. Civ. P. 12(d)).  A district court must ordinarily give notice to the parties before converting a motion to dismiss into a motion for summary judgment, but a party "is deemed to have notice that a motion may be converted . . . if that party should reasonably have recognized the possibility that such a conversion would occur." Sira v. Morton, 380 F.3d 57, 68 (2d Cir. 2004) (citation omitted); see also Hernandez, 458 F.3d at 307.  Here, AMI devotes a significant portion of its opposition brief to arguing that by relying on the Tsushima Declaration and exhibits attached thereto, Toshiba was, in effect, "pursuing a motion for summary judgment in the guise of a motion for judgment on the pleadings."  Having itself characterized Toshiba's application as a motion for summary judgment, AMI can hardly object if it is treated as such.

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986).  In making this determination, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."  Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings.  Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

Rule 56(d), Fed. R. Civ. P., prescribes the procedures that a party opposing summary judgment must follow in order to assert that "it cannot present facts essential to justify its opposition."[1]  Under the rule, a party requesting further

---

[1] As part of the 2010 amendments to Rule 56, discussion of the procedure for seeking additional discovery in response to a motion for summary judgment was moved from subdivision (f) to subdivision (d).  The Advisory Committee Notes state that the

discovery in order to defeat a motion for summary judgment must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful.  Gualandi v. Adams, 385 F.3d 236, 244 (2d Cir. 2004).  "The failure to file an affidavit under Rule 56[(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate."  Di Benedetto v. Pan Am World Service, Inc., 359 F. 3d 627, 630 (2d Cir. 2004) (citation omitted).  "A reference to Rule 56[(d)] and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[(d)] affidavit."  Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994).  Even if a proper affidavit is filed, a court can reject a request for further discovery "if it deems the request to be based on speculation as to what potentially could be discovered."  Id. at 1138; see also National Union Fire Ins. Co. of Pittsburgh, PA. v. Stroh Companies, Inc., 265 F.3d 97, 117 (2d Cir. 2001).  "A bare assertion that the evidence supporting a plaintiff's

---

new subdivision (d) "carries forward without substantial changes the provisions of former subdivision (f)."

allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56[(d)]." Id. (citation omitted).

II. Toshiba's Breach-of-Contract Claim

Toshiba is entitled to judgment in its favor on its breach of contract claims. "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011). As related above, the undisputed evidence establishes that a valid contract exists, that Toshiba performed its obligations under the Agreement by granting AMI a patent license, and that AMI failed to pay royalties for the use of Toshiba's patents, and that as a result Toshiba was denied royalty income to which it was entitled.

In resisting entry of judgment, AMI argues primarily that a dispute exists as to whether Toshiba adequately performed its obligations under the Agreement. Specifically, as suggested above, AMI maintains that Toshiba has failed to comply with the MFR Clause by offering other licensees royalty rates lower than those paid by AMI, without offering those same rates to AMI. Although the Amended Answer suggests that if Toshiba were found to have violated the MFR Clause, the Court would be required to

12

"[d]eny any recovery to Toshiba and dismiss all of Toshiba's claims," that is not the case.

Under New York law, "[a] party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract." Frank Felix Associates, Ltd. v. Austin Drugs, Inc., 111 F.3d 284, 289 (2d Cir. 1997). In this case, while it may be true that the MFR Clause was an important reason that AMI agreed to pay the particular royalty rate that it did, it cannot be maintained that the clause was the reason that AMI agreed to pay any royalties at all.  The essential "object of the parties in making the contract" was undisputedly the exchange of licenses for some amount of compensation, and given that during the relevant period AMI reported that it had produced and sold over 8 million DVDs using the Licensing Group's proprietary technology, AMI cannot credibly claim that a breach of the MFR Clause, if one occurred, would excuse it of any obligation whatsoever to pay.

AMI's defense based on the implied covenant of good faith and fair dealing is equally unavailing.  AMI appears to assert that, by failing to audit the books of its licensees, Toshiba violated the spirit of Agreement -- allowing licensees to underreport their sales and, in effect, pay a reduced per disc

13

royalty rate.  New York law implies a covenant of good faith and fair dealing "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir. 2006) (citation omitted).  The implied covenant, however, "can only impose an obligation consistent with other mutually agreed upon terms in the contract.  It does not add to the contract a substantive provision not included by the parties."  Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198–99 (2d Cir. 2005) (citation omitted).  AMI's argument would effectively convert the Audit Clause from a right of the licensor to be exercised at its discretion to an obligation.  That understanding of the Agreement cannot be squared with the permissive terms in which the Audit Clause is framed.

   Although AMI's Answer asserts a number of additional defenses to liability, neither the Answer nor AMI's brief in opposition to the instant motion sets forth the factual basis for these defenses or discusses their legal elements.  It is well settled, that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  Tolbert v. Queens Coll., 242 F.3d 58, 75 (2d

14

Cir. 2001). Thus, in light of the foregoing analysis, Toshiba is entitled to judgment in its favor.

III. AMI's Breach-of-Contract Counterclaim

In addition to asserting Toshiba's alleged violation of the MFR Clause as a defense to liability, AMI has filed a counterclaim for breach of contract.[2] Although, as discussed, a violation of the MFR Clause, if proven, would not allow AMI to escape its obligation to pay royalties for its use of the Licensing Group's proprietary technology, it might entitle AMI to an offset against the royalty rate specified in the Agreement and therefore bear on the amount of damages to be awarded to Toshiba. But AMI has introduced no evidence tending to suggest that such a violation occurred. To the contrary, the documents produced during the targeted discovery period following the initial pretrial conference establish that Toshiba offered its DVD licensees royalty rates lower than those paid by AMI on only three occasions -- in March 2005, January 2008, and December 2011. On each occasion, the reduced rates were offered to AMI as well, but AMI, for whatever reason, failed to accept them.

---

[2] Although AMI has also asserted a counterclaim based on the implied covenant of good faith and fair dealing, as has already been explained, that argument is rooted in an erroneous understanding of the Agreement.

15

In an effort to avoid the conclusion that Toshiba complied with the MFR Clause, AMI speculates that Toshiba's document production was incomplete and failed to reflect licenses granted to other DVD producers on more favorable terms than those offered to AMI.  To support this claim, AMI notes that the Tsushima Declaration and its supporting exhibits do not reflect that Toshiba notified other licensees of the Back Royalty rates that Toshiba offered to AMI as part of the 2005 Agreement.  AMI maintains that, under the MFR Clause, which is incorporated in the contracts of all licensees, Toshiba was required to make such a notification, although it acknowledges that "these more favorable rates may not be retroactively applied."  Based on this reading of the Clause, AMI speculates from Toshiba's failure to notify other licensees of the Back Royalty rates offered to AMI that, in other instances, Toshiba may have violated the Clause in ways that were prejudicial to AMI.  AMI misreads the Agreement.  It clearly states that "Article 6.1 shall not apply to . . . determination by Licensor of back royalties owed by a Licensee," and, crucially, Article 6.1 contains both the notification and rate-modification requirements upon which AMI relies.  Thus, contrary to AMI's assertion, this incident does not suggest that Toshiba has

violated the MFR Clause in its dealings with AMI or any other licensee.

Unable to present (or even allege) facts to support its claim that Toshiba has violated the MFR Clause, AMI contends that it is entitled to further discovery in order "to determine the extent of Toshiba's compliance with its obligations and therefore the amount owed in royalties."  But AMI was provided with an opportunity for just such discovery following the May 2012 conference and never raised with the Court Toshiba's refusal to provide it with any discovery it sought.  Moreover, even now, AMI has not made a targeted request for additional discovery or otherwise complied with the requirements of Rule 56(d).  As noted, "[t]he failure to file an affidavit under Rule 56[(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate."  Di Benedetto, 359 F. 3d at 630 (citation omitted).  There is therefore no basis to find that additional discovery would materially advance AMI's counterclaims.  The undisputed record evidence, as reflected by AMI's own royalty reports, demonstrates that AMI is indebted to Toshiba for $468,139.70 in overdue royalty fees, plus interest at the contractually specified rate.

CONCLUSION

Toshiba's July 13 Motion, which is treated as a motion for summary judgment, is granted in the principal amount of $468,139.70. Toshiba shall submit a proposed judgment that includes a calculation of the appropriate interest and costs no later than September 14, 2012.

SO ORDERED:

Dated:   New York, New York
         September 4, 2012

_____
DENISE COTE
United States District Judge